19-1341 KneeBinding v. Marker Good morning, my name is Jamie Gallagher and I represent KneeBinding, the appellant. My argument this morning is relatively succinct and it is directed to the claim language itself. And KneeBinding made the same argument they're making here on appeal at the board for what the claim term that is in dispute means. But you didn't pose it as a claim construction argument? No, not at the beginning. And partly it didn't strike KneeBinding that these claim words could be interpreted in a different way than we are proposing. And while we're on that, am I also right in, or is it also right to think that while you made the assertion that this claim limitation was one that restricted movement to only movement in the horizontal plane, that you didn't yourself either point to the prosecution history, particularly the explanation that overcame Weigel or Weigel or Weigel or whatever it is. Yeah, I'm not sure. And also didn't point the board to the portion of Marker's district court claim construction brief that appears on its face to adopt your claim construction position. That is true. And I think it comes back to the fact that the claim terms themselves are so clear and the order of them are very important. And if we take that proper construction that we're putting forth, KneeBinding wins on validity. Claim one is valid in light of the two pieces of prior art. But I think if we look at the claim language itself, and we can find that at, I apologize. It's at appendix 51 and a much clearer portion of that is presented on the first page of our reply brief. The claim language reads that we're in the three component elements cooperate to limit motion of the lateral release assembly to within a predetermined region within a plane defined by the longitudinal and horizontal axes of the ski. And that the two limit motion to aspect of that is very restrictive. It doesn't qualify what motion of the lateral release assembly is being limited. It straight to the point to say that to limit motion of lateral release assembly to this claimed region, which is in the plane. And when you look at a plane that's defined by the horizontal and longitudinal axes of the ski, and a region within that plane, and the lateral release assembly is limited to, if the movement of the lateral release assembly is limited to that region, it's clear that it doesn't have the ability to move vertically or in other aspects. And the fact that the claim doesn't speak to whether or not it can move in a vertical way or a diagonal way or whatever other direction is not all that important in the fact that the claim language itself is not open. It's closed. It's the motion is limited to. I guess, on the language point which you're focusing on your view seems to me to be perhaps the more natural one, but it seems to me not quite to exclude a understanding of this language as meaning. When you are thinking about this plane, the motion is limited to a predetermined area within it. So that right. But I'm not sure what that's the board's seeming determination. Why just focusing on the words is that unreasonable because we're under a broadest reasonable interpretation standard here, unlike in the district court, which we have to start with the words, at least they were in the claim. When the application was filed, it is the claim that was issued. And if you go to the specification and look there, there's not any great distinction that says, only when you're in the region, are you restricted to plane, there's nothing there that says that either. And we could go to the prior art, which is what marker seems to need to do to find that. Well, things move vertically. So maybe ours did. But that was the point of this invention was to keep the lateral release assembly limited to that horizontal plane. And so the fact that the claim language seems to be clear on its face, that we could possibly go out and broaden it to include this concept of when when the lateral release assembly is in the region, it's restricted to the plane or possibly when it's in the plane, it's restricted to the region. But the claim term doesn't include those. Right. I guess one perhaps linguistic way of doing that, if you're looking at the claim languages to rearrange the two clauses so that after assembly, you would put a comma and say within a plane defined by the longitude and horizontal axis, the ski comma to within a predetermined region. There are many ways you could move the words around, move the preposition to to later in the in the in the phrase, and it might mean what the district court, the board came to. But the way the way they did it, they didn't provide a lot of intelligence to us exactly how they made this leap at appendix 23 from saying that our argument that we made was not good. The argument that marker made. We like that. We're going to say that the claim term means this. That is, you know, seemingly only when it's in the region where we restricted the plane is just seems to be a legal error there that is divorced of what the claim terms really mean. I'm sorry. Tell us again what the legal error is. The final determination of the board on what they think the claim term means is a legal determination. And it's a new bindings assertion that the leap that they made from citing deciding the language at the top of appendix 23 to the next sentence, which I believe just paraphrases the wording of the, the, the claim itself without getting to the third sentence after it, where they, they state this idea that when it's in the region, it's restricted to the plane. And that is inconsistent with the claim language. And it's not surprising that market might have pushed for this type of interpretation. Based on the fact that the 298 reference the German reference in the book smart reference to the US patent. They, they had pointed in their petition to components of both those inventions in the prior art that they asserted were the lateral lease assemblies of our claim. But in both cases, those, those components move vertically outside of that plane. So if we come to the right conclusion as to what the claim term means. What we assert is the correct conclusion to what the claim term means. And you have to look at the claim language if you're going to try to determine what the claim term means. Then, these two references, no longer invalidate claim one. And it's interesting that markers made no arguments throughout the process at the board level or even here. As to if we're correct on that claim construction, how would these two references still apply? And so it's our contention that if the proper claim construction is used, that there's the claim one is valid. So, in other words, your view is that this is a one issue case, your argument. If the board's claim construction is affirmed, then there's no argument that the prior didn't teach the elements of the claim. And conversely, if we thought that the board's construction was incorrect, then you would say that we should reverse. That is correct. I was just checking in red whether they responded. You clearly did say that in blue. I'm just trying to see if there was a pushback, but we can ask a friend. Yep. If you have no other questions at this time, I'll reserve my five minutes for rebuttal. Thank you. Thank you. May it please the court. Anthony Fitzpatrick on behalf of the Appellee Marker Vocal USA, Inc. I'd like to— Just as a housekeeping matter, could you just refer to the final point your friend made, which is if we were to agree with him and not with the board on the claim construction that would have missed us? I think that as to the first ground of unpatentability based on the German 298 reference, the answer to that would be yes, because that was an anticipation argument. And so if it were to be construed in that manner, that reference doesn't meet that limitation. As to the other reference, the second ground of unpatentability, that's an obvious misargument based on the 772 patent in combination with the German reference. We never had an opportunity because they never raised this expressly as a claim construction argument. We never really had an opportunity to address this and to make a case that perhaps it might be invalid or unpatentable under that combination. I would like to make two principal points in my argument this morning. The first relates to how the appellant's arguments have changed over the course of this proceeding, because I think that that provides important context and background for the new arguments that they're making in this appeal. And then secondly, obviously, I'd like to address the broadest reasonable interpretation of the where in clause in light of the specification. And in particular, explain how the appellant's position would exclude the sole embodiment that's disclosed in the patent. Now, they are raising just one issue on appeal, but below they raised several issues. And one of the arguments they raised related to the 772 ground of unpatentability, and in particular, an express claim construction argument that they made. That the lateral release assembly and the upper heel housing had to be functionally separate. And that was part of a broader argument that they were making that in the 867 patent, and we heard it again in my friend's argument, that the claimed device isolates or separates forces. It separates the vertical force from the lateral force. The lateral release assembly, as its name suggests, relates to lateral release, and the upper heel housing contains the components that relate to vertical release. And those include the heel cup. The heel cup is expressly disclosed in the patent as a component of the upper heel housing. It's also disclosed as being the only component that applies securing, lateral securing pressure to the ski boot. And they contended that in their view, because these two elements were separate, because in the 772 patent, they're not separate, but therefore the 772 didn't meet that element. The board rejected that argument. The board said that the specification discloses that the lateral release assembly and the upper heel housing actually share components. And the board wrote, this is at appendix 9. This is not an argument that's being made on appeal, right? And what followed from it was that because the heel cup moves vertically, then the lateral assembly and the embodiment is also moving vertically. And since that's really the only embodiment, this claim construction can't work. But they did say in their patent owner response that no, I'm going to simplify here, no vertical motion is allowed. They did that in responding to the principal prior art. They didn't do it in claim construction. They didn't tell the district court either about what you had said in the Vermont district court in your claim construction or the prosecution history. But they didn't make the point. So why are we restricted to, I assume you think we're not supposed to consider the prosecution history or what you yourself said in the district court. Why not? This is one of those cases where the issue is preserved and hence all the arguments that are relevant to the issue can be considered. Well, because I think, and this is the, for example, the Warsaw orthopedic case that we cited in our brief explains this. The issue is the board didn't have an opportunity to consider all of these arguments. So the record was not fully developed and the board didn't have an opportunity to talk about this. Right, but we do have precedent, this is CCS fitness or something, that this is always a difficult line to draw sometimes. When the position is asserted, then on appeal you can make additional arguments in support of the same position. Why is that not this? The board did actually recognize the position was being asserted because it rejected it at 822 and 823. Correct. So the position was there. It is, I think, conceded that perhaps the two strongest things that could be said in support of the position were not actually said to the board. Yes. But why can't we consider them? It may be that the court in its discretion could consider them. Again, I would submit that the board didn't have an opportunity to look at those issues. I would say with respect to the prosecution history, I think that's at best inconclusive. Illegal? I think so, Your Honor. Let me read to you from your own, I think I'm getting this, this is your own district court markment brief at 1603. It becomes clear in the prosecution history that this limitation, this is the one we're talking about, is a key distinction over the prior art. Specifically, the patentees argued that the limitation of movement of the lateral release assembly to a plane defined by the longitudinal and horizontal axis of the ski overcame the examiner's objection to Weigel. I think, Your Honor, that was part of the argument that they made, but it wasn't the entire. That was your argument, I'm sorry. No, I understand, Your Honor. I understand. But I guess my position would be that was part of what they argued, but not the entirety of what they argued. And they argued. When you say they argued, what do you mean? Who are you referring to as they? I'm sorry, Your Honor. Knee binding. But I thought that this was your argument, so it's not knee binding's argument. It's your reliance on the prosecution history, your client's reliance. Perhaps I'm not being clear, Your Honor. My point is when you look at the prosecution history, and I recognize that we made this argument in the district court, but when you look at the prosecution history, the prosecution history in detail, the prosecution history shows that knee binding made more than one argument with respect to this particular reference. And then what happened was the examiner moved to a different rejection, deemed the argument's moot, and moved to a different Breyerot reference. Just to make sure I understand what you're saying, you're saying that knee binding presented multiple reasons for why the part was distinguished and the examiner did not adopt the one here about vertical movement. Correct. That's my position. Again, just on that, this is 1145 of the appendix. This is the legal distinction made by knee binding in response to the legal rejection. It's describing Weigel and says that the locking element there, nine, allows movement within three spatial dimensions of the lateral release assembly and clearly does not limit the lateral release assembly to a plane defined by the longitudinal or horizontal axes of the ski. Thus, Weigel does not teach or suggest all elements. Why is that not a pretty darn plane, sorry about that, plane assertion that we are distinguishing Weigel on the ground that we limit motion, all the motion of this thing to within the plane and Weigel doesn't? Well, again, Your Honor, I would say they go on and have further argument with respect to Weigel. And they talk in the next paragraph about bearing block 22 and make an argument that that doesn't limit motion of the lateral release assembly, which is not in fact what the examiner said. So the examiner wasn't relying on bearing block 22 as the linkage element. And so the record is, I would say, less than 100% clear on this issue. And so I don't think it rises. This is the argument that we made in our brief. It doesn't rise to the level of a disclaimer. It doesn't rise to the level of an unequivocal statement would be our position. But you wouldn't need a disclaimer if the language of the claim coupled with the specification still allowed interpretive room. Then the prosecution history counts for deciding, as a skilled artisan would be reading that, how to resolve the difficulty, what's left open by the other two sources of intrinsic evidence. Understood. And they do have something pretty strong, if not conclusive on the claim language. And perhaps you have something decisively strong on the spec. Well, and I would like to go to that point because I do think that that is decisive. The reality is the wearing clause is directed to limiting motion of the lateral release assembly. The claim read in full context teaches us that the lateral release assembly is for applying lateral securing pressure to the ski boot. The only component disclosed in the specification that comes in contact with the heel of the ski boot is the heel cup. And the heel cup, as shown in figure two of the patent, is part of the upper heel housing. It's disclosed in column nine of the patent as applying lateral securing pressure to the boot. And it's also disclosed at, so when the boot rotates laterally, the heel cup moves laterally. And when the boot releases vertically, the heel cup moves vertically. So here you've got this central component of the lateral release assembly, which moves in both planes. It moves in the vertical plane and it moves in the lateral plane. And so with that broader context, we would submit that the wearing clause is really directed to these three components. The linkage element, the first surface, and the second surface that cooperate to limit the motion of the lateral release assembly to the predetermined region when the boot is down and when there's motion in the lateral plane. That's really read in the full context of the claim, read in light of the teaching of the specification. That is the broadest reasonable construction of the claim language. And just to, I think maybe we discussed this, but you were not dealing with the broadest reasonable interpretation standard in the district court in Vermont. Correct. That's correct. And I also would just like to point out that just going back to this idea of them changing their position, there's a lot in their current brief about this notion of delinking of movement, separation of vertical and lateral movement. And really what I would submit they're trying to do is they're trying to recycle the argument that they made before the board about the lateral release assembly and the upper heel housing being separate. They've gone from talking about separate mechanisms to now talking about separate movement. It's the same concept that permeates their argument now, but it's really, again, I would submit, unpersuasive under the broadest reasonable interpretation standard. The board, I think, properly determined that pages 22 and 23, properly determined the scope of this claim term and properly determined that the claim was unpatentable, claims were unpatentable in light of the prior art. I do want to address one argument that my friend raised in his reply brief, which is a new argument relating to the scope of the lateral release assembly. Knee-binding argues in its reply brief, this is at page 18 of the reply brief, that the lateral release assembly, the language of claim one requires that the structure of the lateral release assembly be limited so that its own movement in the vertical direction is restricted. That's a completely new argument. It never appeared before the board, never appeared in the opening brief. We would submit under this court's case law, for example, the Smith-Klein-Beacham case, that that argument is waived. But in any event, it's unpersuasive. That position would exclude the heel cup from the lateral release assembly and therefore would exclude the sole disclosed embodiment from the claim. In closing, your honors, I would just like to say the appellant could have, before the board, sought leave to amend its claim. It never did that. It could have sought reconsideration after the final decision. Never did that. We think the board's proper conclusion was that the broadest reasonable interpretation is as the board determined and therefore the claims are unpatentable. Thank you. The heel cup. We do not believe the heel cup is part of the lateral release assembly. We've made that clear. I don't believe that you need to reinterpret or to construe lateral release assembly to see the error in the interpretation of the wearing clause. The wearing clause was in the claim when it was filed, and it, in our opinion, on its words, described a limitation that is closed on the motion of lateral release assembly. And in some way, the circular argument of going into the specification and presuming that just because the heel cup is in contact with the boot and the heel cup is stated clearly that it is applying a retention pressure to the back of the boot. If the boot moves upward, it engages the vertical release mechanism that's in the upper part of the upper housing, the spring mechanism that's in that portion, and it can be seen in figure two. The. Is it really fair to say that that argument about whether the heel cup is part of both of the assemblies, but most importantly, one part of the lateral release assembly is challenged on appeal? I mean, I thought that overwhelmingly the claim construction argument placed before the board was this one about how the two things have to be separated, have to be separable. And you haven't appealed that. And so it was probably and that kind of, I think, amounts to the same question about how to read the spec. And if the spec is at least under BRI, essentially decisive in the absence of some of these other arguments like and what they said in district court probably don't matter very much. Why, though, do we have before us a ground for questioning the board's conclusion that these two assemblies don't need to be physically separated and therefore can't, in the board's view, can share the heel cup? I'm not sure, and I may be incorrect, but my understanding is that the board never actually concluded and found that the heel cup was a portion, the heel cup itself was a portion of either of these two components that were being construed at the time, the linkage element and the lateral release assembly, which were argued as being functionally different, that they pose different functions. They did conclude that the functions were shared and they pointed to the pivot rod and the portion of the lateral release cam 17B, the thin type stem that comes up into the plastic housing and allows the vertical release mechanism of the upper housing to rotate in that order around the pivot mechanism. But I don't believe that the board ever said that the lateral release cam was part of any particular component in the claim. And the claim was there originally. This idea that the only disclosed embodiment is that which is shown by figure two, there was another disclosed embodiment if you took their position anyways. But our position is that the claim one language is the same embodiment as figure two, but the claim language was there. And if you look at the claim language that was filed and you take our position about what it is saying, the claim language saying that you can't move outside of this horizontal plane, then the heel cup can't be part of the lateral release assembly. Because the heel cup clearly moves up and down. It can be a component that applies a retention pressure. But the specification has a lot of language directed to the lateral release 340 in figure one, which propagates down into figure two, three, and four and is detailed in figure three and four as including a lateral release cam, lateral release spring element. The release components of all figure two, three, and four are all located down below outside of the upper heel housing. And it's true that there is a part of the lateral release cam that goes up into that upper housing. But it is conceivable and it is our position that the lateral release assembly does not include the heel cup. It includes the components articulated in the specification as the lateral release components that apply that force on the lateral movement of the stem 17B. And that translates to the heel cup, but the heel cup doesn't have to be part of the lateral release assembly, which can have the same function of applying a force to the ski boot. And it does that because it has the spring mechanism in the lower portion that attaches to the lateral release cam 17 and then attaches upward to the stem. And that's how it translates that. But they don't have to be the same component. Thank you. Thank you. And so besides the cases submitted, that concludes our proceeding for this morning. All rise.